**NOT FOR PUBLICATION**

CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RICARDO ROLON, | : | |
| Petitioner, | : | **OPINION** |
| v. | : | |
| | : | Civ. No. 03-3902 (WHW) |
| UNITED STATES OF AMERICA, | : | Crim. No. 01-583 |
| Respondent. | : | |

**Walls, Senior District Judge**

Petitioner Ricardo Rolon, moves, *pro se*, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] The motion is denied.

**FACTUAL AND PROCEDURAL HISTORY**

On January 30, 2001, American Airlines Flight #152 departed from Los Angeles, California, and arrived at Newark International Airport in Newark, New Jersey. (Presentence Investigation Report in <u>United States v. Rolon</u>, 4 ¶8, Nov. 19, 2001 [hereinafter PSR].) After Petitioner exited the terminal, a Drug Enforcement Administration ("DEA") agent approached Petitioner and identified himself as a DEA agent. (PSR, 4 ¶9.) Petitioner agreed to speak with the agent and later agreed to a search of his carry-on bag. Inside the bag the agent found three red plastic bricks of what appeared to be cocaine. (PSR, 4 ¶12.)

---

[1] On January 13, 2006, Petitioner filed a motion pursuant to Fed. R. of Civ. Pro. 60(b)(1-6) to reopen his original 28 U.S.C. § 2255 motion. Because this opinion considers the original 28 U.S.C. § 2255 motion and because the matter was never closed, the 60(b) motion is moot.

**NOT FOR PUBLICATION**

The agent then placed Petitioner under arrest, at which time Petitioner denied any knowledge of the cocaine. (PSR, 4 ¶13.) According to a DEA laboratory report, Petitioner possessed a total net weight of 2,980 grams of cocaine with a purity level of 78 percent. (PSR, 5 ¶14.) On January 30, 2001, the United States filed a criminal complaint charging Petitioner with possessing with intent to distribute more than two (2) kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

On September 7, 2001, Petitioner pled guilty to a one-count Information charging him with possessing with intent to distribute more than two (2) kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Criminal Docket Entry 12, United States v. Rolon, (D.N.J. 2001) (No. 2:01-cr-00583).) The Plea Agreement granted the sentencing judge sole discretion in determining the Petitioner's sentence, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and the United States Sentencing Guidelines. (Plea Agreement, United States v. Rolon, June 12, 2001.)

The United States Probation Department distributed the final Presentence Report to the United States and counsel for the Petitioner on November 19, 2001. The Presentence Report stated that the net weight of cocaine attributable to the Petitioner warranted a Base Offense Level of 28, pursuant to U.S.S.G. § 2D1.1(c)(6). (PSR, 3 ¶5(2).) The Presentence Report identified the Petitioner as a career offender within the meaning of U.S.S.G. § 4B1.1 based on previous convictions for a controlled substance offense and a crime of violence, raising his offense level to 34. (PSR, 6 ¶28.) It also stated that Petitioner qualified for a 3 point downward adjustment for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and 3E1.1(b)(2). (PSR, 6 ¶29-30.) The

**NOT FOR PUBLICATION**

Presentence Report Total Offense Level was 31, and combined with a criminal history category of VI, the combined guideline range was 188 to 235 months of imprisonment. (PSR, 22 ¶113.)

Petitioner's sentencing hearing took place on December 19, 2001, and the Court adopted the Presentence Report recommendation. (Sent. Tr. at 4:15-18.) Judge Politan sentenced Petitioner to the custody of the Bureau of Prisons for 188 months, the minimum sentence permitted under the United States Sentencing Guidelines.

On December 28, 2001, Petitioner filed a notice of appeal of the sentence, arguing that "the court failed to consider his downward departure application on its merits, instead relying on its apparent bias against defendants with a prior conviction for domestic violence." (Pet'r Br. 8.) The Third Circuit dismissed petitioner's appeal for lack of appellate jurisdiction.

Petitioner now moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds that he was deprived of effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. Petitioner claims he was deprived of effective assistance of counsel before trial because: (1) counsel failed to file a motion to dismiss the indictment on the ground that the Government violated his rights by not indicting him within 30 days of his arrest as required by 18 U.S.C. § 3161 (b), and (2) counsel failed to inform Petitioner of the likelihood that he would be classified as a career offender under the sentencing guidelines. Petitioner also claims that he was denied the right to effective assistance of counsel when counsel failed to raise on appeal that the Court violated Fed. R. Crim. P. 32(c)(3)(A) by failing to determine whether Petitioner had read the Presentence Report and discussed it with his attorney. Finally, Petitioner claims that he was denied his right to effective assistance of counsel at

NOT FOR PUBLICATION

sentencing because: (1) counsel abandoned the request for a minor role adjustment, and (2) counsel failed to object to the Court classifying him as a career offender under U.S.S.G. § 4B1.1.[2]

## STANDARD OF REVIEW

A habeas corpus petitioner is entitled to relief under a 28 U.S.C. § 2255 motion to vacate, set aside or correct the sentence if his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. The Sixth Amendment guarantees that "in all criminal prosecutions the accused shall enjoy the right to have assistance of counsel for his defense." U.S. Const. Amend. VI. The Supreme Court has since held that defendants have the right not just to counsel but to "reasonable effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

---

[2]On November 30, 2004, after the Government had already answered, Petitioner filed an Amendment in Support of his 28 U.S.C. § 2255 motion. (Civil Docket Entry 17, Ricardo Rolon v. United States, (D.N.J. 2006) (No. 03-cv-3902).) Petitioner argued that (1) in the wake of the Supreme Court decision in Blakely v. Washington, 542 U.S. 296 (2004), the Federal Sentencing Guidelines are unconstitutional, and (2) he received certain criminal history points "unjustly" because the Presentence Report stated that one charge was dismissed, the facts of one charge were unknown, and he was not imprisoned for a third charge. Petitioner's first argument fails because, while the Third Circuit has held that the "Blakely rule" is a "new rule" that changed the courts' understanding of statutory maximums for sentencing, it has made clear that it is not retroactively applicable to 28 U.S.C. § 2255 motions. See Lloyd v. United States, 407 F.3d 608, 612-16 (3d Cir. 2005) (holding that the Blakely rule, as applied by the Supreme Court in United States v. Booker, 543 U.S. 220 (2005), is not applied retroactively), cert. denied, 126 S. Ct. 288 (2005). Petitioner's second argument fails because it was filed after the one-year statue of limitations period expired for new claims as to why counsel was ineffective. The Third Circuit has held that allowing such an amendment "would [frustrate] the intent of Congress that claims under 28 U.S.C. § 2255 be advanced within one year after a judgment of conviction becomes final unless any of the other circumstances in 28 U.S.C. § 2255 are applicable" (here they are not). United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999), cert. denied, 528 U.S. 866 (1999).

**NOT FOR PUBLICATION**

Although "[t]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal," United States v. Frady, 456 U.S. 152, 166 (1982), the Third Circuit has recognized that "[t]he proper mechanism for challenging the efficacy of counsel is through a motion pursuant to 28 U.S.C. § 2255." United States v. Tobin, 155 F.3d 636, 643 (3d Cir. 1998), cert. denied, 525 U.S. 1171 (1999). Under a collateral challenge a prisoner must show both (1) "cause" for not having raised the point in question on direct appeal and (2) "actual prejudice" to him as a result of this error. Frady, 456 U.S. at 167; United States v. Essig, 10 F.3d 968, 979 (3d. Cir. 1993). While "a successful showing of ineffective assistance of counsel may satisfy the 'cause' prong of the procedural default inquiry . . . it can only do so if the ineffectiveness rises to the level of constitutional deprivation under Strickland." United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000) (citing Coleman v. Thompson, 501 U.S. 722, 753-54 (1991)).

The Strickland Court established a two-pronged test to determine whether the assistance of defendant's counsel was so defective as to require reversal of a conviction. Strickland, 466 U.S. at 687. First, the defendant must demonstrate that counsel's performance was deficient by showing that counsel's "errors were so serious" that counsel's representation fell below the level guaranteed by the Sixth Amendment. Id. Second, "[t]he defendant must show that the deficient performance prejudiced the defense." Id. In other words, the defendant must demonstrate that the errors made by counsel were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

**NOT FOR PUBLICATION**

The facts established in a *pro se* petition should be accepted as true unless they are clearly frivolous.  See Government of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989) (accepting the movant's averments as true), cert. denied, 500 U.S. 954 (1991); see also Moore v. United States, 571 F.2d 179, 184 (3d Cir. 1978) (accepting as true allegations made in a *pro se* opinion when the record did not expand upon the factual claims).  While this Court must hold a hearing when there is a disputed issue of fact, it may dispense with the hearing if "the allegations . . . [are] patently frivolous" or "contradicted conclusively by the record."  Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001).  If the "motion, files and records 'show conclusively that the movant is not entitled to relief'" then the Court may summarily dismiss the petition.  28 U.S.C. §2255.

## DISCUSSION

Petitioner submits that an evidentiary hearing is required to determine whether his counsel failed to recognize the merits of the claims below.  (Pet'r Br. 13.)  Petitioner also claims that such a hearing will show that counsel's performance led to the constitutional deprivation of Petitioner's right to effective counsel as established in Strickland, and that he suffered prejudice as a result. Id.

The Court recognizes that it must hold an evidentiary hearing when there are valid issues of fact in dispute, Solis, 252 F.3d at 295, and that a successful ineffective assistance of counsel claim satisfies the cause prong of the Frady procedural default test so long as the ineffectiveness reaches the constitutional deprivation level of Strickland.  Mannino, 212 F.3d at 840.  For each claim the Court must decide if (1) there is a disputed issue of fact that requires a hearing and (2) if counsel was ineffective, whether the ineffectiveness satisfies the two-prong Strickland test.

**NOT FOR PUBLICATION**

**A.      Analysis**

     **1.      Counsel's Failure To File A Motion To Dismiss The Indictment Before Trial**

Petitioner was arrested on January 30, 2001.  That day, Petitioner appeared before a magistrate judge and consented to detention without bail pending trial.  (Criminal Docket Entry 2.)  The Court proceeded to order four consecutive sixty-day continuances – from  February 9, 2001-April 14, 2001; April 6, 2001-June 5, 2001; June 5, 2001-August 4, 2001; and August 4, 2001-October 3, 2001 – which remained in effect until Petitioner entered a plea of guilty to a one-count Information on September 7, 2001.  (Criminal Docket Entry 7, 8, 9, 10.)

Petitioner argues that because he was not indicted within 30 days of his arrest, his counsel was ineffective for failing to file a motion to dismiss the indictment in violation of the Speedy Trial Act.  See 18 U.S.C. § 3161(b) (stating "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges").  Petitioner acknowledges, however, that 18 U.S.C. § 3161(h) provides that certain "periods of delay shall be excluded in computing the time within which an information or an indictment must be filed." (Pet'r Br. 17.)  Specifically, the judge can grant a continuance:

> [O]n the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.  No such period of delay resulting from continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

**NOT FOR PUBLICATION**

18 U.S.C. § 3161(h)(8)(A). But Petitioner claims that "[b]ecause there is no sufficient evidence in the record indicating that the magistrate judge considered the factors identified in the statute when it granted the continuance,[3] and [because the Court] completely failed to make an explicit ends-of-justice determination in granting the continuances, the period from February 14, 2001 through October 3, 2001 was not excludable." (Pet'r Brief 20.) Petitioner submits that counsel's performance was "objectively unreasonable" and unconstitutional under Strickland because her performance was deficient and resulted in prejudice to Petitioner. Id.

This argument fails because the record indicates that the magistrate judge stated in writing his reasoning for ordering the ends of justice continuances. The magistrate judge directed in each order that the action should be continued because:

> (1) Plea negotiations are currently in progress, and both the United States and the defendant desire additional time to negotiate a plea agreement, which would render any grand jury proceedings and any subsequent trial of this matter unnecessary;
> (2) Defendant has consented to the aforementioned continuance;
> (3) The grant of a continuance will likely conserve judicial resources
> (4) Pursuant to Title 18 of the United States Code, Section 3161(h)(8), the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant in a speedy trial.

(See, e.g., Order For Continuance, United States v. Rolon, Aug. 15, 2001.) A judge can grant a continuance on the basis of his findings that the ends of justice served by taking such action

---

[3] 18 U.S.C. § 1361(h)(8)(B) lists factors which a judge should consider in determining whether to grant an ends of justice continuance, including whether failure to grant the continuance would lead to a miscarriage of justice, whether the case is so unusual or complex that it is unreasonable to expect adequate preparation in the established time limits, whether the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in 3161(b), and whether the failure to grant such a continuance would deny the defendant reasonable time to obtain counsel. 18 U.S.C. § 1361(h)(8)(B).

**NOT FOR PUBLICATION**

outweigh the best interest of the public and the defendant in a speedy trial.  18 U.S.C. § 1361(h)(8)(A); United States v. Fields, 39 F.3d 439, 442 (3d. Cir. 1994).  In this case, the Court stated *in the text* of each continuance order that the ends of justice in granting the motion for continuance – specifically the likelihood of the parties to reach a plea agreement, the defense's consent, and the conservation of judicial resources – outweighed the interests of a speedy trial.  There is no reason to find this conclusion to be inappropriate: "Our inquiry is limited to the question whether the district court abused its discretion in granting this continuance," United States v. Brooks, 697 F.2d 517, 522 (3d Cir. 1982), cert. denied, 460 U.S. 1073 (1983), and here there is no evidence of abuse.  The time period of the continuances was excludable under § 1361(h)(8)(A) and Petitioner's counsel was not ineffective when she failed to file a pretrial motion to dismiss the indictment.

> **2.     Counsel's Alleged Failure To Inform Petitioner That He Might Be A Career Offender**

Petitioner claims that he had ineffective assistance of counsel before pleading guilty to the one-count Information charging him with possessing with intent to distribute more than two kilograms of cocaine.  (Pet'r Br. 22.)  He argues that counsel did not advise him that he could be classified as a career offender under § 4B1.1 of the United States Sentencing Guidelines, and that it was not until he received the Presentence Report and appeared for sentencing that he discovered he was facing a higher sentencing range based on his career offender status.  (Pet'r Aff. ¶5-6.)  Furthermore, Petitioner argues that the failure to inform him of the implications of career offender status constituted deficient assistance of counsel under Strickland, and he submits that he would not have pled guilty had he known that his sentencing range under the Guidelines

-9-

**NOT FOR PUBLICATION**

increased from 110-135 months to 188-235 months if he was determined to be a career offender under U.S.S.G. § 4B1.1. (Pet'r Br. 24-28.)

"When a motion is made under 28 U.S.C. § 2255 the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992) (quoting Forte, 865 F.2d at 62). While this Court recognizes that it must construe the allegations in a *pro se* petition liberally, Day, 969 F.2d at 42, the record in this case conclusively demonstrates that the claims are clearly frivolous so that they may be rejected without an evidentiary hearing.

The affidavit of Assistant Federal Public Defender ("AFPD") Lorraine Gauli-Rufo, appointed as counsel to Petitioner after his initial arrest on January 30, 2001, counters the Petitioner's claim that he was unaware of his possible classification as a career offender. On April 15, 2005, she stated in a sworn affidavit that "[p]rior to entry of the plea agreement, [Petitioner] and I discussed the implications of 'career offender,' U.S.S.G. § 4B1.1, on several occasions." (Gauli-Rufo Aff. ¶4.) She also stated that "[p]rior to [the sentencing hearing], [Petitioner] and I thoroughly reviewed the Presentence Report. We had several discussions regarding the Presentence Report, including, once again, the career offender implications." (Gauli-Rufo Aff. ¶5.)

Also, on November 8, 2001 AFPD Gauli-Rufo sent an "objections letter" to Elizabeth A. Nagle, United States Probation officer, stating that "the defense objects to the adjustment for

**NOT FOR PUBLICATION**

career offender" found in the Presentence Report.  (Obj. Ltr., Nov. 8, 2001.)  She stated in the letter that the defense would challenge the adjustment for career offender at sentencing. Petitioner was copied on this letter, which serves as evidence that counsel discussed with Petitioner the possibility that his sentence would increase if the Court determined him to be a career offender.

Finally, on December 7, 2001, AFPD Gauli-Rufo sent a letter brief to District Court Judge Politan arguing that the Court should grant a downward departure from Petitioner's "classification as a career offender."  (Pet'r Ltr. Br., Dec. 7, 2001.)  The letter recognizes that career offender status serves to enhance a prisoner's sentence, and argues that the Court should recognize that a downward departure from such a classification is warranted in this case.  Again, Petitioner was copied on this letter brief, serving as evidence that counsel and Petitioner previously discussed the possible career offender classification.

In Day, the Third Circuit found that it was necessary for the District Court to hold an evidentiary hearing to determine whether counsel failed to explain to the defendant that he might be classified as a career offender.  969 F.2d at 44.  In that case, the evidence in the record did not support a finding that the defendant had been informed by counsel regarding his career offender status.  Id.

However, the record in the present case – based on AFDP Gauli-Rufo's affidavit and the letters of November 8, 2001 and December 7, 2001– supports a finding that Petitioner and counsel did discuss the possibility of his being classified as a career offender.  Petitioner's claim that he did not discuss his career offender status with counsel is clearly frivolous based on the

-11-

**NOT FOR PUBLICATION**

record. And this Court exercises its discretion to dismiss this portion of the motion without an evidentiary hearing.

### 3. Counsel Failed To Raise On Appeal That The Court Violated Fed. R. Crim. P. 32(i)(1)(A)

Petitioner argues ineffective assistance of counsel because counsel failed to raise on appeal that the Court violated the Fed. R. Crim. P. 32(i)(1)(A) requirement that at sentencing it "must verify that the defendant and defendant's attorney have read and discussed the presentence report and any addendum to the report."[4] (Pet'r Br. 28.) Petitioner maintains that "the record is completely void as to evidence pointing towards whether Rolon had the opportunity to read and discuss the presentence investigation report with his counsel." (Pet'r Br. 29.) Because "Rolon did not encounter the presentence report until he had arrived at prison," Petitioner claims that appellate counsel's performance was both deficient and prejudicial under the Strickland standard. (Pet'r Br. 29-30.)

Although during the sentencing hearing the District Court did not expressly verify that the Petitioner discussed the Presentence Report with counsel, Petitioner concedes that the Third Circuit has resisted making "an absolute requirement that the court personally ask the defendant if he has had the opportunity to read the report and discuss it with counsel." United States v. Stevens, 223 F.3d 239, 241 (3d Cir. 2000) (citing United States v. Mays, 798 F.2d 78, 80 (3d Cir. 1986)), cert. denied, 531 U.S. 1179). Instead, the Court has "allowed for a more functional

---

[4] Petitioner's Brief cites the relevant Rule as 32(a)(3)(A). In 2002, the Federal Rules of Criminal Procedure were reorganized. As a result, the violation alleged by Petitioner now refers to Rule 32(i)(1)(A). However, neither the substance nor wording of the Rule has changed, and Petitioner's argument will be considered by the Court under 32(i)(1)(A).

-12-

**NOT FOR PUBLICATION**

fulfillment of the rule, only requiring that the district court 'somehow determine that the defendant has had this opportunity.'" Stevens, 223 F.3d at 241 (quoting Mays, 798 F.2d at 80).

The Government does not argue that the District Court satisfied the verification standard of Rule 32(i)(1)(A). Rather, it asserts that the violation does not meet the "plain error" standard of review appropriate for Rule 32 challenges. (Reply Br. 15 (citing Stevens, 223 F.3d at 242 (stating that the District Court can vacate and remand for resentencing for a Rule 32 violation only if the claim satisfies the "plain error" standard of review defined in Fed. R. Crim. P. 52(b)).) In order to meet the plain error standard, Petitioner must show that (1) an error was committed; (2) the error was plain; and (3) the error affected Petitioner's substantial rights. Stevens, 223 F.3d at 242 (citing United States v. Olano, 507 U.S. 725, 732-34 (1993)). Based on the Stevens analysis, Petitioner's argument that the error affected his substantial rights is meritless. Before the sentencing hearing, Petitioner's counsel, AFPD Gauli-Rufo, advised in a letter brief to the District Court dated December 7, 2001 that at the time of the sentencing hearing Petitioner would argue that a downward departure from the Presentence Report sentencing guideline range was appropriate.[5] (Pet'r Ltr. Br., Dec. 7, 2001.) Just as the Stevens Court cited the fact that "prior to sentencing defense counsel filed a memorandum with the court discussing the PSR" as evidence of discussion of the Presentence Report between the defendant and counsel, Stevens, 223 F.3d at

---

[5]"Mr. Rolon is scheduled to be sentenced on December 17, 2001. At that time, he will argue that a downward adjustment of two points for his minor role in the drug importation conspiracy is merited. He will also seek a downward departure on the ground that his classification as a career offender over-states his criminal history. Finally, he will ask the Court to impose a sentence in the lower end of the applicable guideline range in light of his substance addictions, which lie at the root of his criminal activities." (Pet'r Ltr. Br., Dec. 7, 2001.)

**NOT FOR PUBLICATION**

243, this Court recognizes the December 7, 2001 letter brief as evidence of discussion between Petitioner and counsel.

Additionally, Petitioner's counsel asked the Court during the sentencing hearing to "depart down from his guideline range, which would be 188-235 months[.] The defendant's position is that the criminal history was over-represented, as we requested." (Sent. Tr. 2:25-3:1, Dec. 19, 2001.) The Government correctly argues in its reply brief that "AFPD Gauli-Rufo's argument to Judge Politan at sentencing for a downward departure is . . . evidence that defendant and counsel had read and discussed the PSR." (Reply Br. 16.) In Stevens, the fact that "at sentencing defense counsel discussed the PSR's description of [defendant's] prior offenses" supported a finding that the defendant's substantial rights were not violated. Stevens, 223 F.3d at 242. Likewise, here the transcript evidence demonstrates that Petitioner's substantial rights were not negatively impacted by any Rule 32 violation.

The evidence supports a finding that Petitioner reviewed the Presentence Report before he arrived at prison. The failure of counsel to pursue the Rule 32 violation on appeal was neither deficient nor prejudicial, and Petitioner's argument does not satisfy the two-pronged Strickland test for ineffective assistance of counsel.

   **4. At Sentencing, Counsel's Alleged Abandonment Of A Request For A Two Point Downward Adjustment For Petitioner's Minor Role in the Offense**

Petitioner argues ineffective assistance of counsel during sentencing because counsel "completely abandoned her position on the downward departure based on [Petitioner's] minor role." (Pet'r Br. 39.) On December 7, 2001 counsel filed a letter brief stating that Petitioner was qualified for "a downward adjustment of two points for his minor role in the drug importation

**NOT FOR PUBLICATION**

conspiracy" under U.S.S.G. § 3B1.2(b). (Pet'r Ltr. Br., Dec. 7, 2001.) Petitioner asserts that counsel did not repeat this argument at sentencing, and Petitioner maintains that "there is simply no rational basis to believe that counsel's abandonment at sentencing . . . was a strategic choice." (Pet'r Br. 42.) He argues that "defense counsel's performance was deficient because counsel failed to request the adjustment at sentencing" and "[i]f counsel had argued for the adjustment, and the Court had awarded [it], his sentencing range would have been reduced to 151 to 188 months." (Pet'r Br. 43.) Petitioner concludes that this deficient and prejudicial action by defense counsel satisfies the two prong Strickland test. Id.

The Third Circuit "has held that the failure to argue an appropriate downward departure constitutes ineffective assistance of counsel." Vega v. United States, 269 F. Supp. 2d 528, 533 (D.N.J. 2003) (citing United States v. Headley, 923 F.2d 1079, 1083-84 (3d Cir. 1991)). However, the Government correctly notes that in this case the record indicates that defense counsel properly moved for a downward adjustment for Petitioner's role as a minor offender pursuant to U.S.S.G. § 3B1.2(b), and that the District Court denied the motion. (Reply Br. 18-20.) AFPD Gauli-Rufo clearly argues in the December 7, 2001 letter brief to the Court that her client deserves a downward departure based on his role as a minor offender. (Pet'r Ltr. Br., Dec. 7, 2001.) Also, she stated during the sentencing hearing that "[w]e set forth our reasons in a letter sent to your Honor dated December 7, 2001." (Sent. Tr. 2:21-2:3, Dec. 19, 2001.)

The Court responded to defense counsel's arguments for a downward departure by stating "Good motion, Ms. Gauli-Rufo, which you should be proud of. But having said that, you have not convinced me that a downward departure is appropriate." (Sent. Tr. at 4:21-5:2.) This

**NOT FOR PUBLICATION**

interaction between defense counsel and the Court demonstrates that counsel argued for a minor role adjustment during the sentencing hearing. This oral request for a downward departure, combined with the written argument in the December 7, 2001 letter brief to the Court, makes it apparent that defense counsel properly argued for a minor role adjustment, and Petitioner's claim of ineffective assistance of counsel is denied.

>    **5.    Counsel Failed To Object To The Court Classifying Petitioner As A Career Offender Under U.S.S.G. § 4B1.1**

Petitioner argues that "[a]t the sentencing hearing, while counsel requested a downward departure because Rolon's criminal history over-represented his culpability to commit further crimes, at no time did counsel argue that one of his prior convictions did not legally qualify as a predicate conviction for career offender purposes." (Pet'r Br. 44.) He contends that counsel's failure to raise an objection for inclusion of a 1997 conviction for sale of a controlled dangerous substance constitutes an "obvious case of deficient performance." (Pet'r Br. 48.) Specifically, Petitioner maintains that (1) he never pled guilty to the controlled substance offense, but rather the Presentence Report inadvertently included this conviction in his criminal history at ¶ 61; and (2) the conviction should not have been used as a predicate offense under U.S.S.G. § 4B1.1 because it does not meet the definition of a controlled substance offense under the guidelines. (Pet'r Br. 46.)

Regarding Petitioner's first claim, it is clear from the Court's review of certified copies of the state court records relating to his conviction for Sale of a Controlled Substance that Petitioner pled guilty on November 26, 1997 to a violation of California Health & Safety Code §

**NOT FOR PUBLICATION**

11379(A).[6]  (See Civil Docket Entry 17, Ricardo Rolon v. United States, (D.N.J. 2006) (No. 03-cv-3902).)  Petitioner was sentenced to a prison term of three years, which was served concurrently with a sentence for a later offense.  Because Petitioner was in fact convicted for the sale of a controlled substance, counsel was not ineffective for failing to argue the accuracy of this conviction.

Petitioner next argues that he was convicted for a controlled substance offense under a broad statute that encompasses offenses that do not qualify as predicates for career offender status under the sentencing guidelines.  Petitioner maintains that the Court should look to the statutory definition of the crime when determining whether a prior conviction qualifies as a predicate for career offender status.  See United States v. Casarez-Bravo, 181 F.3d 1074, 1077 (9th Cir. 1999) ("In determining whether a prior conviction supports career offender status, we generally look to the statutory definition of the crime, rather than to the defendant's specific conduct").  In this case, the statute under which he was convicted allows for the possibility that he was convicted of a crime that did not constitute a controlled substance offense for the purposes of career offender status.

The Third Circuit has held that "if the statute of conviction is unclear or broad enough to criminalize acts that are not properly classified as a controlled substance offense, the sentencing court may look beyond the bare elements of the statute." United States v. Shabazz, 233 F.3d

---

[6]Petitioner identifies the statute as California Health & Safety Code § 11352(A).  However, the record indicates that Petitioner was convicted under California Health and Safety Code § 11379(A).  For the purposes of determining whether this conviction qualifies as a predicate offense for career offender status, the Court looks to § 11379(A).  Because the material language of the two statues is the same, the Court's analysis is unaffected.

**NOT FOR PUBLICATION**

730, 732 (3d Cir. 2000). When looking beyond the elements of the statute, the Court can consider "easily produced and evaluated court documents, such as any helpful plea agreements or plea transcripts, any presentencing reports . . . and any findings made by the sentencing judges." United States v. Perez, 79 Fed. App'x 519, 522 (3d Cir. 2003) (citing Shabazz, 233 F.3d at 732).

During Petitioner's sentencing hearing, the Court adopted the Presentence Report as its findings in this matter, (Sent. Tr. 4:17-18), and the report lists the challenged offense as a prior conviction that contributes to Petitioner's career offender status. See Shabazz, 233 F.3d at 730 (looking to the Presentence Report for evidence to determine whether a prior conviction was a predicate to career offender status).

Also, the Court can look to the charging papers relating to Petitioner's conviction for a controlled substance offense. See United States v. Zamora, 15 Fed. App'x 478, 479 (9th Cir. 2001) (looking to the government's complaint as evidence of a prior conviction); United States v. Sweeten, 933 F.2d 765, 769 (9th Cir. 1991) (considering defendant's indictment as evidence of a prior conviction). Petitioner was convicted of selling a controlled substance in violation of California Health and Safety Code § 11379(A). (See Civil Docket Entry 17.) U.S.S.G. § 4B1.1(a) directs that an earlier felony conviction of a controlled substance offense qualifies as a predicate offense for categorizing a defendant as a career offender. A controlled substance offense is defined as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute or dispense.

**NOT FOR PUBLICATION**

U.S.S.G. § 4B1.2(b).  Because Petitioner was convicted for the *sale* of a controlled substance under California Health & Safety Code § 11379(A) and sentenced to three years in prison, this offense clearly fits within the definition of a controlled substance offense under the sentencing guidelines.  Petitioner's allegation that a defendant could be convicted of an offense that was not a predicate to career offender status does not apply to the facts of this case.  Counsel was not ineffective for failing to challenge this conviction as a predicate offense.

**B.**     **Certificate of Appealability**

Under 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483 (2000).  "Where a district court has rejected the constitutional claims on the merits, the . . . petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id.

For the reasons stated in the opinion, petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253.  Accordingly, no certificate of appealability shall issue.

**CONCLUSION**

Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied.

                                                                              **s/William H. Walls**
                                                                              United States Senior District Judge

**NOT FOR PUBLICATION**

**Appearances**

Ricardo Rolon
Reg. No. 23678-050
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954-0670
	Pro se Petitioner

Ricard O.I. Brown
Assistant United States Attorney
U.S. Attorneys Office
Eastern District of New Jersey
50 Walnut Street
Newark, NJ 07101-0459
	Attorney for Respondent